IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JILL C. WOODS**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   2:11cv1558 |
| | )   **Electronic Filing** |
| **GARDEN RIDGE MANAGEMENT, LLP.**, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

August 16, 2013

**I.    INTRODUCTION**

Plaintiff, Jill C. Woods ("Woods" or "Plaintiff"), filed a three (3) count Complaint alleging: (1) age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (the "ADEA"); (2) gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); and (3) violations of the Pennsylvania Human Rights Act, 43 Pa. Cons. Stat. Ann. § 925 *et seq.* (the "PHRA"), against Defendant Garden Ridge Management, LLP ("Garden Ridge").  Garden Ridge has filed a motion for summary judgment, Woods has responded and the motion is now before the Court.

**II.    STATEMENT OF THE CASE**

Woods, an adult female over the age of forty (40), was employed by Garden Ridge as a General Manager of Garden Ridge Store 57 from June 16, 2008, until her termination on April 26, 2010. Garden Ridge Concise Statement of Material Facts (hereinafter "G-R CSMF") ¶¶ 1, 3 & 4.  Second level management at Garden Ridge stores were called "Assistant Managers" or "Co-Managers" and reported directly to the General Manager.  G-R CSMF ¶ 5.  The Co-Managers at Store 57 who reported to Woods included Jennifer Brinkley, Wendy Grube, Cary

McShane and Gino Paoletti. G-R CSMF ¶ 6; Woods Response ¶ 6.  Woods reported to District Manager, Howard Basinger ("Basinger").  G-R CSMF ¶ 7.

Woods' primary responsibilities as General Manager were: (1) supervision of store employees; (2) promoting the profitability of the store; (3) ensuring compliance with corporate directives; (4) scheduling of store employees; and (5) ensuring merchandise was in good condition.  G-R CSMF ¶ 11.  All management level employees are responsible for following the policies and directives from Garden Ridge's corporate office. G-R CSMF ¶ 14.  The highest ranking employee in the store at any given time, the manager on duty, is responsible for ensuring that Garden Ridge's policies and procedures are followed within the store. *Id.*  The General Manager is ultimately responsible for all activity within his or her store, as well as the store's overall performance.  G-R CSMF ¶ 15.

On February 12, 2010, Tina Laube, Vice President of Operations for Garden Ridge, sent an e-mail to all stores and district managers regarding new store staffing policies. G-R CSMF ¶ 16.  The "Subject" of the e-mail was "nights - please print, read, implement tonight, let me know if you have any other suggestions" and in relevant part stated as follows:

> As you are all aware, we close <u>all stores</u> with a staff of 4 people from Tier 1 to Tier 8. The purpose of this type of schedule is to drive more work/productivity to the mornings/afternoons. Then leave evenings largely to checking out customers, carry outs, and minimal other duties. . .
>
> With our labor models the way they are it is critical to always get as much productivity out of every minute possible, but I want you to review what is occurring in your building and make immediate changes to ensure we are creating a safer work environment, while reducing shrink, without putting too much pressure on your night crews.
>
> Here is what I suggest you implement immediately:
>
> . . . you can let your team of two work on the front end, while other team of 2 work [put aways]. . . .

2

> Get with your teams and set expectations that during any time in the evening that **at least two people** (FEM and someone else) have their eyes on the front door.
>
> Please make immediate change tonight!!

*See* Garden Ridge Appendix Exhibit B[1]. Laube also instructed all stores that during evening hours, all employees not assigned to the front of the store, must work in teams. Laube Declaration ¶ 8.

When creating a store's schedule, a General Manager was required to assign specific employees to particular shifts, but was not permitted to alter any corporate-directed shift times or modify the number of employees prescribed to be present by each tier. G-R CSMF ¶ 20. The schedule was required to be uploaded to Garden Ridge's shared hard drive and physically posted in the store. G-R CSMF ¶¶ 21 & 22. Any changes to the schedule had to be approved in writing by the District Manager, and the revised schedule had to be uploaded to the shared hard drive and posted within the store. G-R CSMF ¶ 22.

Garden Ridge issued specific guidance to all stores regarding merchandise displays that must be set up at a particular time. G-R CSMF ¶ 23. The Garden Ridge corporate office would send each store packets of signs for certain identified items, along with instructions regarding which merchandise was to be placed on display in the store. *Id.* Each store was responsible for setting up the displays required by the corporate instructions, and taking down merchandise no longer to be displayed. *Id.*

Approximately once per month, Basinger would visit each store under his supervision to audit the appearance of each store, particularly the main "mall" area, and to audit the store's

---

[1] Exhibit B of the Appendix consists of Laube's declaration and three (3) exhibits to her declaration.

attendance records and count room records. G-R CSMF ¶ 24. On March 10, 2010, Allan Bauwin, Director of Stores and Basinger's immediate supervisor, made an unannounced visit to Store 57. G-R CSMF ¶¶ 8 & 25. Bauwin praised the store's physical appearance, but noted that Woods was not following Garden Ridge's directive that the employees work in teams, and she was not preparing the schedules according to policy. G-R CSMF ¶¶ 25 & 26.

Woods contends that during the visit, Bauwin said to her, "I could just give you a hug and a kiss right now for how your store looks." Woods Depo. p. 43. Bauwin did not attempt to hug or kiss Woods. Woods Depo. p. 45. Woods indicated that she was "professionally" offended by Bauwin's statement, however, she admits that she did not complain to anyone about the remark. Woods Depo. pp. 45-47.

Bauwin contacted Basinger and informed him of his concerns regarding Store 57's failure to have two employees at the front of the store, the failure to work in teams, and the violations of Garden Ridge's scheduling policy. G-R CSMF ¶¶ 28 & 29. Basinger and Bauwin decided that Woods should receive a warning because of the infractions. G-R CSMF ¶ 30. On March 19, 2010, Basinger issued Woods a performance discussion record which indicated the following issues or policy violations: (1) failure to implement company directive, relating to evening front end coverage; (2) creating a schedule with modifications; and (3) self-directed damage process. Basinger Depo. p. 77. Though the performance discussion record indicated this was a final warning, Woods testified that though she read and signed the document, she was unaware it was a final warning. Woods Depo. p. 50.

In addition to the monthly audits conducted by district managers, Garden Ridge also conducts more in-depth unannounced audits of all its stores. Laube Declaration ¶ 13; G-R CSMF ¶ 35. The audit consists of a "secret shopper" during which a Garden Ridge representative examines the store from a shopper's perspective, without revealing his or her

identity, and after the representative identifies himself or herself, the representative conducts a formal audit. Laube Declaration ¶ 13; G-R CSMF ¶ 36. The formal audit examines the stores' compliance with corporate policies and directives. *Id.*

On April 20 and April 21, 2010, Operations Specialist Susan Summers ("Summers") conducted an unannounced audit of Store 57. G-R CSMF ¶ 37. During the "secret shopper" portion of the audit on the evening of April 20, Summers found that Store 57 was not following Garden Ridge's team directive as the store did not have two (2) employees at the front of the store, and the remaining employees were not working in teams. G-R CSMF ¶¶ 38 & 39. She also noted that a number of displays were missing. Laube Declaration Exhibit 2. On the morning of April 21st, Summers returned to Store 57 to conduct the formal audit. G-R CSMF ¶ 40. The formal audit revealed the following scheduling guideline violations: (1) the shared hard drive indicated that Woods was scheduled to open the store, but Co-Manager Jennifer Brinkley opened the store; (2) no supporting documentation reflecting an approved shift change was attached to the posted in-store schedule; (3) Woods was scheduled to work from 8:00 a.m. to 6:00 p.m., but she was not present in the store; (4) her absence had not been approved in writing and her absence was neither posted on the in-store schedule nor reflected on the schedule saved to the shared hard drive; and (5) employees were permitted to work outside of their scheduled times. G-R CSMF ¶¶ 40, 42 & 44.

Summers reported the violations to Laube. Laube Declaration ¶ 16 & Exhibit 2. Laube then e-mailed Basinger and Bauwin noting the many policy violations and indicating her disgust "with the **continued** renegade behavior." Laube Declaration ¶ 16 & Exhibit 3 (emphasis in original). Laube told Basinger and Bauwin "to review and discuss" and to send Laube their "list of proposed actions and timelines immediately." Laube Declaration Exhibit 3. Bauwin confirmed to Laube that he had previously addressed the teamwork and scheduling issues with Woods.

Laube Declaration ¶ 17. Because Basinger had previously issued Woods a final warning for the same conduct, Laube decided to terminate Woods immediately. Laube Declaration ¶ 18. Basinger informed Woods of her termination on April 26, 2010. G-R CSMF ¶ 53.

### III.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id*. The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. *Whiteland Woods, L.P. v. Township of West Whiteland,* 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e). Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a

summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

**IV.   DISCUSSION**

    A.    <u>Age Discrimination Under the ADEA and the PHRA</u>

Woods contends that her employment with Garden Ridge was wrongfully terminated based upon her gender and her age[2]. Under the ADEA, an employer is prohibited from discharging any individual or otherwise discriminating against an individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's age. 29 U.S.C. § 623(a)(1). A plaintiff can sustain a claim of discrimination under the ADEA by presenting either direct or circumstantial evidence of discrimination. *See Duffy v. Magic Paper Group, Inc.*, 265 F.3d 163, 167 (3d Cir. 2001). Because Woods has not provided direct evidence of discrimination, our inquiry is governed by the three-part framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-803, (1973) (the "McDonnell Douglas analysis"). *See Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009) (reaffirming the use of the McDonnell Douglas analysis in ADEA cases involving indirect evidence).

---

[2] There is no need to differentiate between Woods' Federal discrimination claims and PHRA claims because, for our purposes, the same analysis is used for each. *See, e.g., Simpson v. Kay Jewelers*, 142 F.3d 639, 643-44 & n.4 (3d Cir. 1998); *Jones v. School District of Philadelphia*, 198 F.3d 303, 410-411 (3d Cir. 1999); *Fairfield Township Volunteer Fire Co. No. 1 v. Commonwealth*, 609 A.2d 804, 805 (Pa. 1992).

Under the McDonnell Douglas analysis, once the employee establishes a *prima facie* case of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employer's adverse employment decision. *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802. If the employer makes that showing, the burden of production shifts once again to the employee to establish that the employer's proffered justification for the adverse action is pretextual. *Tex. Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 254-255 (1981). Throughout this burden-shifting exercise, the burden of persuasion remains on the employee. *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1095 n.4 (3d Cir. 1995) (citing *Tex. Dep't of Comm. Affairs v. Burdine*, 450 U.S. at 253).

Woods, therefore, bears the initial burden of establishing a *prima facie* case of discrimination. *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006); *Atkinson v. LaFayette College*, 460 F.3d 447, 454 (3d Cir. 2006). To establish a *prima facie* case, Woods must demonstrate that: (1) she is a member of the protected class, *i.e.* at least 40 years of age; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) that she was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus. *Smith v. City of Allentown*, 589 F.3d at 689 (citing *Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 366, 370 (3d Cir. 2004). To establish a *prima facie* case at summary judgment, "the evidence must be sufficient to convince a reasonable factfinder to find all of the elements of [the] *prima facie* case." *Duffy v. Paper Magic Grp.*, 265 F.3d 163, 167 (3d Cir. 2001). Garden Ridge concedes for the purpose of this motion only that Woods can show a *prima facie* case of age discrimination.

The burden now shifts to Garden Ridge to offer a legitimate non-discriminatory reason for terminating Woods. *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997); *Simpson v. Kay Jewelers*, 142 F.3d at 644 n.5. This burden is "relatively light" and is satisfied if

the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason. *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)); *see also Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012) (describing this step as a "minimal burden").

The Court finds that Garden Ridge has met its burden. Garden Ridge has produced evidence that Woods was terminated for repeated violations of the company's policies on staffing and scheduling. On March 19, 2010, Basinger issued Woods a performance discussion record which indicated the following issues or policy violations: (1) failure to implement company directive, relating to evening front end coverage; (2) creating a schedule with modifications; and (3) self-directed damage process. Basinger Depo. p. 77. Basinger indicated to Woods that the performance discussion record was a final warning. Basinger Depo. p. 79.

Notwithstanding, Basinger's discussion regarding the violations of Garden Ridge policies, an unannounced audit on April 20 and April 21, 2010, revealed that Woods and Store 57 continued to have teamwork and scheduling issues. Because Basinger had previously issued Woods a final warning for the same conduct, the decision was made to terminate Woods for violating Garden Ridge policies and directives.

Woods must show that Garden Ridge's articulated reason for her termination is merely a pretext for age discrimination. An employee may demonstrate that her employer's legitimate nondiscriminatory reason is pretextual by submitting evidence that allows a factfinder to either 1) disbelieve or discredit the employer's justification; or 2) believe discrimination was more likely than not a "but for" cause of the adverse employment action. *Abels v. Dish Network Serv., LLC*, 2012 U.S. App. LEXIS 25384, 9-10 (3d Cir. Pa. Dec. 12, 2012)(citing *Fuentes v. Perskie*, 32 F.3d at 764). *See also Gross v. FBL Fin. Servs.*, 557 U.S. 167, 177-178 (2009). Evidence

undermining an employer's proffered legitimate reasons must be sufficient to "support an inference that the employer did not act for its stated reasons." *Sempier v. Johnson & Higgins*, 45 F.3d 724, 731 (3d Cir. 1995).

In order to discredit Garden Ridge's proffered justification under the first prong of *Fuentes*, Woods must present evidence demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies (sic), or contradictions" in the proffered reasons "that a reasonable factfinder could rationally find them unworthy of credence," and ultimately infer that Garden Ridge did not act for the asserted nondiscriminatory reasons. *Fuentes v. Perskie*, 32 F.3d at 765. If Woods' evidence rebutting Garden Ridge's proffered reason permits a factfinder to conclude that such reason (or reasons) was either a "post hoc fabrication" or otherwise did not actually prompt the employment action, then summary judgment is inappropriate. *Fuentes v. Perskie*, 32 F.3d at 764.

Alternatively, Woods must show that age-based discrimination was a "but-for" cause of Garden Ridge's decision to terminate her. To meet this burden, Woods "cannot simply show that [Garden Ridge's] decision was wrong or mistaken." *Fuentes v. Perskie*, 32 F.3d at 765. The question is whether Garden Ridge was motivated by a discriminatory animus, not whether Garden Ridge was wise, shrewd, prudent, or competent. *See Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531, 533 (3d Cir. 1992); *Villanueva v. Wellesley College*, 930 F.2d 124, 131 (1st Cir.), *cert. denied*, 502 U.S. 861 (1991). *See also Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 332 (3d Cir. 1995) ("[A]n employer may have any reason or no reason for discharging an employee so long as it is not a discriminatory reason.").

Woods contends that Garden Ridge's reasons for terminating her were pretextual because: (1) she had no disciplinary record for the first two years of her employment; (2) she was disciplined for failing to comply with policies that were presented as "suggested" and "optional";

(3) she was disciplined for not showing up at work on a pre-approved day off; and (4) she was disciplined for taking the initiative to sell damaged goods at a discounted price. The Court finds Woods' reasoning to be unavailing.

Woods' contention that she had no disciplinary record during her first two years of employment not only fails to prove that Garden Ridge's real reasons for terminating her employment were discriminatory, but such contention is inaccurate. During an audit on March 10, 2010, Bauwin found that Store 57 failed to have two employees at the front of the store, failed to work in teams, and violated Garden Ridge's scheduling policy. G-R CSMF ¶¶ 28 & 29. As a result, Basinger issued Woods a performance discussion record, which included a "final warning, on March 19, 2010. Basinger Depo. pp. 77, 79. Woods' noted failures on April 20 and April 21, 2010, which led to her termination, also occurred within two (2) years of the commencement of her employment on June 16, 2008.

Woods also argues that Garden Ridge disciplined her for failing to adhere to policies presented to her as "suggestions" or "options." Specifically, Woods contends that Laube's e-mail of February 10, 2010, outlining the new evening policy requiring at least two employees to be at the front of the store and the remaining employees to work in teams of two, was merely a suggestion and not a directive. Laube's e-mail, however, clearly states: "Please make immediate change tonight!!" Garden Ridge Appendix Exhibit B. This was a policy that Laube wanted implemented in all stores immediately. There was no indication that her instructions were optional. Moreover, once Woods was given a final warning for violating the new policy, she should have known it was more than a "suggestion."

Woods' final two reasons also fail to establish that the Garden Ridge's proffered justification for her termination was pretextual. Even if Woods had a pre-approved day off, her absence was neither posted on the in-store schedule nor reflected on the schedule saved to garden

Ridge's shared hard drive as required. Additionally, there was no discriminatory animus associated with the discipline Woods received for taking the initiative in selling damaged merchandise at discounted prices. Woods, therefore, failed to show that any of these incidents were related to her age. *See Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d at 540; *Simpson v. Kay Jewelers*, 142 F.3d at 648.

Finally, Woods argues that she was treated less favorably than a similarly situated younger male employee, Gino Paoletti. The Third Circuit has instructed that under the McDonnell Douglas analysis, a plaintiff is not permitted to simply selectively choose a comparator in order to show differing treatment among protected and non-protected group members[3]. *See Simpson v. Kay Jewelers*, 142 F.3d at 645. *See also Donlin v. Philips Lighting N. Am. Corp.,* 581 F.3d 73, 90 (3d Cir. 2009) (plaintiff could not selectively "pick and choose" a comparator for purposes of computing damages under Title VII, rather plaintiff must choose similar employees against whom to compare herself). To be deemed similarly situated, the comparator must be roughly equivalent to the person in question. *Gazarov v. Diocese of Erie*, 80 Fed. App'x. 202, 205 (3d Cir. Pa. 2003) (citation omitted).

Clearly, "similarly situated" employees need not be "identically situated" in order to be valid comparators. *See Bennun v. Rutgers State Univ.*, 941 F.2d 154, 178 (3d Cir. 1991). Courts have recognized, however, that in order for an co-employee to be an appropriate comparator, he

---

[3] In *Kay Jewelers*, the Third Circuit found that allegations concerning the treatment of one younger employee were insufficient as a matter of law to infer age discrimination. *Id.* at 645. The determination of whether an employer's actions support an inference of discrimination is to be made based on the treatment of the allegedly more favored group as a whole, such that a showing of preferential treatment to one member of the non-protected class, standing alone, is generally not sufficient to create an inference of discrimination. *See id.* at 645-46*; see also McDonnell Douglas*, 411 U.S. at 804 (employer's actions are prohibited only if based on criteria applied to members of all races). If the use of a single comparator is insufficient to raise an inference of age discrimination, it is also inadequate to establish pretext.

or she should hold a similar position, report to the same supervisor, possess a similar disciplinary record, and engage in the same type of misconduct as the plaintiff. *Hodczak v. Latrobe Specialty Steel Co.*, 761 F. Supp. 2d 261, 269 (W.D. Pa. 2010); *See also, e.g., Opsatnik v. Norfolk Southern Corp.*, 335 F. App'x. 220, 223 (3d Cir. 2009) (non-precedential opinion) ("Which factors are relevant [in discerning whether an individual is similarly situated] is determined by the context of each case, but often includes a 'showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'"(internal citations omitted)); *Martin v. Pachulski, Stang, Ziehl, Young & Jones, P.C.*, 551 F. Supp. 2d 322, 329 n.2 (D. Del. 2008) (employees who did not hold the same positions were not comparably situated); *Robinson v. PFPC, Inc.*, 2010 U.S. Dist. LEXIS 19303, 2010 WL 744191, at *5 (E.D. Pa. Mar. 4, 2010); *Dawson v. Harran*, No. 08-7, 2009 U.S. Dist. LEXIS 69428, 2009 WL 2431343, at *6 (E.D. Pa. Aug. 6, 2009) (co-workers who did not share the same supervisor, were employed for a longer period of time, and did not hold equivalent title could not be used as comparators.)

In this instance, all parties agree that Paoletti was a Co-Manager at Store 57 who reported to Woods. G-R CSMF ¶ 6; Woods Response ¶ 6. Woods, on the other hand reported to District Manager, Howard Basinger. G-R CSMF ¶ 7. Paoletti, therefore, did not hold a similar employment position with Garden Ridge. In addition, there is no evidence that Paoletti violated the same policies and directives as Woods, or that Paoletti was ever operating under a "final warning." Clearly, Woods and Paoletti did not have similar disciplinary records. In light of these distinguishing employment factors, Woods has failed to show that Paoletti was "similarly situated" for purposes of establishing a pretext for either age or gender discrimination.

This Court is unable to find any evidence in the record that would either cast doubt on the veracity of Garden Ridge's proffered reason or suggest that the proffered reason was merely a pretext for discrimination. Accordingly, Woods' age discrimination claim fails as a matter of law.

B.    Gender Discrimination Under Title VII and the PHRA

The burden shifting analysis of *McDonnell Douglas* is also used to analyze Woods' claims under Title VII. *See Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 318 (3d Cir. 2000). Garden Ridge concedes for the purpose of this motion only that Woods can show a *prima facie* case of gender discrimination, therefore, the burden shifts to Garden Ridge to offer a legitimate non-discriminatory reason for terminating Woods. As set forth above, the Court finds that Garden Ridge met its burden by producing evidence that Woods was terminated for repeated violations of the company's policies on staffing and scheduling. Woods, therefore, must show that Garden Ridge's articulated reasons for her termination were merely a pretext for gender discrimination.

Aside from the above listed reasons that this Court previously determined did not establish a discriminatory animus, Woods directs the Court to certain statements made by Laube and Bauwin that she contends would allow a factfinder to determine that Garden Ridge's articulated reasons for her termination were merely a pretext for gender discrimination. Woods contends that the following two (2) statements made by Laube are evidence of discrimination: (1) an e-mail dated February 26, 2010, that instructed managers to "get the emotion out and get rid of the bottom performers"; and (2) a statement in the April 21st e-mail to Basinger in which she indicated her disgust with Woods' "**continued** renegade behavior." Laube Declaration ¶ 16 & Exhibit 3 (emphasis in original). The Court finds both statements to be innocuous, made in a

nondiscriminatory context, and insufficient to prove either pretext or that gender was more likely than not a "but for" cause of Woods' termination.

Finally, Woods contends that Bauwin's remark during his visit to Store 57 that "I could just give you a hug and a kiss right now for how your store looks," was sexist and evidence of discrimination. In considering whether stray remarks, such as the comment made by Bauwin, are probative of discrimination, the Court of Appeals for the Third Circuit has considered the following factors: "(1) the relationship of the speaker to the employee and within the corporate hierarchy; (2) the temporal proximity of the statement to the adverse employment decision; and (3) the purpose and content of the statement." *Parker v. Verizon Pa., Inc.*, 309 Fed. Appx. 551, 558-559 (3d Cir. Pa. 2009)(quoting *Ryder v. Westinghouse Elec. Corp.*, 128 F.3d 128, 133 (3d Cir. 1997)); *see also Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1112 (3d Cir. 1997). "Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision." *Fuentes v. Perskie*, 32 F.3d at 767 (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d at 545).

Though not temporally remote, the alleged remark made by Bauwin was not made in the context of an employment or personnel decision. Moreover, the decision to terminate Woods was made by Laube based upon an audit performed by Operations Specialist Susan Summers, and there is no evidence that either Laube or Summers demonstrated a discriminatory animus.

The evidence alleged by Woods, therefore, fails to convince the Court that a factfinder could reasonably believe Garden Ridge's articulated reasons for the termination were false. Nor is there any evidence that Garden Ridge was systematically ridding itself of "older" or "female" managers. Based upon the foregoing, Woods fails to show that her termination was pretextual. Summary judgment on Title VII and PHRA claims shall be granted.

## V. CONCLUSION

The Court finds that there are no material facts in dispute, Woods is unable to show that that Garden Ridge violated her rights under the ADEA, Title VII or the PHRA. Accordingly, Garden Ridge's motion for summary judgment shall be granted. An appropriate order will follow.

s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc: Jeffrey P. Myers, Esquire
Cory E. Ridenour, Esquire
Paul E. Hash, Esquire

(*Via CM/ECF Electronic Mail*)